UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA R.,[1] | Case No.: 21cv1612-BAS(LR) |
| Plaintiff, | **REPORT AND RECOMMENDATION RE:** |
| v. | **(1) PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND** |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | **(2) DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| Defendant. | **[ECF NO. 15; 19]** |

This Report and Recommendation is submitted to the Honorable Cynthia A. Bashant, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California. On September 15, 2021, Plaintiff Cynthia R. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her application for a period of disability and disability insurance

---

[1] In the interest of privacy, this Report and Recommendation uses only the first name and initial of the last name of the non-government party or parties in this case. <u>See</u> S.D. Cal. Civ. R. 7.1(e)(6)(b).

benefits.  (Compl., ECF No. 1.)

Now pending before the Court are the parties' Cross-Motions for Summary Judgment.  (ECF No. 15, 19.)  For the reasons set forth below, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED**, and Defendant's Cross-Motion for Summary Judgment be **DENIED**.  This Court further **RECOMMENDS** the case be **REMANDED** for further proceedings.

## I.     PROCEDURAL BACKGROUND

On July 3, 2018, Plaintiff filed her first application for disability insurance benefits, alleging disability beginning on March 31, 2015.  (Certified Admin. R. 337, ECF No. 11 ("AR").)  Plaintiff then modified her alleged disability onset date in her original application to September 14, 2012.  (Id. at 132-33.)  After her application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (Id. at 198.)  On May 15, 2020, a hearing was held before ALJ James Delphey, which was followed by a supplemental hearing on June 5, 2020, during which Plaintiff was represented by counsel.  (Id. at 56-118.)  A vocational expert ("VE") was also present at both hearings.  (See id.)  On October 29, 2020, the ALJ found that Plaintiff was not disabled between her alleged disability onset date of September 14, 2012 and her date last insured ("DLI") of March 31, 2013.  (See id. at 27.)  On December 21, 2020, Plaintiff requested that the Appeals Council review the ALJ's decision.  (Id. at 258.)

On July 15, 2021, the Appeals Council denied Plaintiff's request to review the ALJ's decision.  (See id. at 1-6.)  Plaintiff filed the instant civil action on September 15, 2021.  (See Compl., ECF No. 1.)

## II.     THE SEQUENTIAL DISABILITY PROCESS

The initial burden of proof rests upon the claimant to establish disability.  See Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet his burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner has established a five-step process for determining whether a person is disabled.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.  At the first step of the five-step sequential evaluation process, the ALJ must determine if a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  At the second step, the ALJ must determine whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted or is expected to last for a continuous period of at least 12 months; if not, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); <u>see also</u> 20 C.F.R. §§ 404.1509, 416.909.  At the third step, the ALJ must determine if the claimant's impairment(s) meets or equals that of a listed impairment; if so, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  At the fourth step, the ALJ must determine whether, based on the claimant's residual functional capacity, the claimant can perform his or her past relevant work; if so, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At the fifth step, the ALJ must determine whether, based on the claimant's residual functional capacity, age, education, and work experience, the claimant can make an adjustment to other work; if so, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.   SUMMARY OF THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between the alleged onset of her disability on September 14, 2012, and her DLI of March 31, 2013.  (<u>See</u> AR at 17-18.)  At step two, the ALJ found that Plaintiff had the following impairments: coronary artery disease.  (<u>See id.</u> at 18-19.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments.  (<u>See id.</u> at 20.)  Next, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to "perform medium work as

defined in 20 CFR 404.1567(c) except that the claimant was frequently able to reach, handle, finger and feel bilaterally; frequently balance, stoop or crouch; occasionally kneel or crawl; frequently climb ramps or stairs; and occasionally climb ladders or scaffolding, but never climb ropes." (Id. at 20-21.)

At step four, the ALJ adduced and accepted the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC would be able to perform her past relevant work, as well as other unskilled occupations existing in significant numbers in the national economy. (See id. at 24-26.) The ALJ then proceeded to step five of the sequential evaluation process. (See id. at 25.) Based on the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy—such as assembler, marker, and office helper—the ALJ found that Plaintiff was not disabled. (See id. at 26-27.)

In determining that Plaintiff was not disabled prior to her DLI, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms" but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record," particularly with regard to the period between Plaintiff's alleged onset date of September 14, 2012 and her DLI of March 31, 2013. (Id. at 22.) In reaching this finding, the ALJ purported to give reduced weight to—and as a practical matter rejected—the opinions of Doctors Richard Haas, Gary Shima, and Andrew Biggs, as well as Nurse Practitioner Nadine Batac, who opined that Plaintiff did not have the residual functional capacity to sustain full-time work between the alleged onset date of her symptoms and her DLI. (Id. at 23-24.)

## IV.   RELEVANT FACTUAL BACKGROUND

The administrative record in this case contains approximately seven years of medical records that reflect Plaintiff's treatment for a multitude of symptoms, pain management consultations, and specialist evaluations, which culminated in Plaintiff's

diagnosis with a rare genetic disorder known as mitochondrial encephalomyopathy, lactic acidosis, and stroke-like symptoms ("MELAS")[3] in 2017 by Dr. Haas, a geneticist and metabolic disease specialist at the University of California San Diego ("UCSD"). (See id. at 23, 856).  Treatment notes by healthcare providers after Plaintiff's MELAS diagnosis—in some cases the same ones who treated her before her diagnosis—reflect severe symptoms related to the condition.  Although the parties do not dispute that Plaintiff eventually became disabled, the inquiry in this case centers around Plaintiff's symptoms between her alleged onset date of September 14, 2012, and her DLI of March 31, 2013.  The Court briefly summarizes relevant medical records at issue below.

**A.    Dr. Shima**

Gary Shima, M.D., was Plaintiff's primary care physician who treated Plaintiff from her alleged onset date in September of 2012, through at least 2019. (See AR 472-74; 2136)  Although many of Dr. Shima's progress notes for consultations are difficult to read, treatment records dated between September of 2012 and 2013 note Plaintiff's complaints of fatigue and pain.  (See, e.g., id. at 2137 (noting "chronic fatigue—pain syndrome" on a form entitled "Conditions to Manage"); 2140 (noting that Plaintiff was "very fatigued" and "needs help" for fatigue on a treatment note form dated January of 2013).)  Despite several treatments in which Dr. Shima administered Argentyn 23 injections for immune system support in September of 2012, Plaintiff still reported fatigue in January of 2013.  (See id. at 472-74).  Dr. Shima then ordered a blood panel in February of 2013, after which he continued to prescribe supplements for Plaintiff's complaints of low energy and pain.  (See, e.g., id. at 493-94.)  Treatment notes indicate that Plaintiff continued to see Dr. Shima until at least 2015, during which she was

---

[3] Mitochondrial encephalomyopathy, lactic acidosis, and stroke-like episodes ("MELAS") is a condition that affects particularly the brain, nervous system, and muscles. The symptoms of MELAS often appear in childhood after a period of normal development, and early symptoms may include muscle weakness and pain, headaches, and seizures.  See Pope v. Sec'y of Health & Hum. Servs., No. 14-078V, 2017 WL 2460503, at *10 n.20 (Fed. Cl. May 1, 2017)

prescribed a number of medications and treated for various symptoms like weakness, fatigue, and pain.  (See id. at 494-508.)  Treatment notes during these sessions assess "muscle pain," "muscle cramps," and intravenous treatment for fatigue, energy levels, and immune system support.  (See id.)

After Plaintiff was diagnosed with MELAS by Dr. Haas at UCSD and following the results of an unspecified "specialist workup," Dr. Shima assessed on a multiple impairment questionnaire dated in 2019 that Plaintiff's symptoms of fatigue, chronic/daily muscle pain, gastrointestinal distress, and others were related to MELAS. (See id. at 2160.)  Dr. Shima assessed a number of restrictions related to Plaintiff's participation in a competitive work environment in this multiple impairment questionnaire, noting that Plaintiff could sit for less than one hour, must frequently get up to move around for thirty to sixty minutes, and would need to frequently elevate her legs and take unscheduled breaks during an eight-hour workday.  (See, e.g., id. at 2162-64.) Dr. Shima also assessed that Plaintiff would be absent from work more than three times a month due to her impairments.  (See id. at 2164.)  The multiple impairment questionnaire noted that the symptoms and limitations it assessed applied as far back as September 14, 2012, and explained that Plaintiff "rapidly progressed in disability—so by 2015 she became more wheelchair bound."  (Id. at 2164.)  Importantly, in a letter dated April 5, 2019, Dr. Shima noted that Plaintiff had been diagnosed with MELAS, had been seen by "a constellation of specialists," and had been permanently disabled since 2012.  (Id. at 2165.)

**B.   Dr. Biggs**

Plaintiff first saw Andrew Biggs, D.O., in October of 2015 during her course of treatment with healthcare providers at Naval Hospital Camp Pendleton, where she was hospitalized on October 28, 2015 for worsening pain and suicidal ideation.  (See id. at 682-87, 1249; Pl.'s MSJ at 8.)  Dr. Biggs notes in a multiple impairment questionnaire filled out in 2018 that he acted as Plaintiff's "primary care manager," interfacing with Plaintiff "in-person or online" as needed.  (See AR at 1249.)  The multiple impairment

questionnaire notes that doctors had been unable to rule out other causes of Plaintiff's condition until she was definitively diagnosed with MELAS by Dr. Haas at UCSD:

> Routine testing for possible common causes of patient's condition were performed by myself and other physicians in the Internal Medicine Dept of Naval Hospital Camp Pendleton. However, due to the severity of patient's condition and the complexity of symptoms, definitive diagnoses was [sic] made with the aid of specialists (to which patient was referred) in the fields of genetics, metabolics, neurology, rheumatology, cardiology, pain management and others.

(Id. at 1249.)  The multiple impairment questionnaire describes the nature of Plaintiff's pain as Central Pain Syndrome and Allodynia, "both presumably as a result of ongoing muscle degeneration due to MELAS."  (Id. at 1266.)

Treatment notes from Dr. Biggs' consultations with Plaintiff in 2017 indicate that she experienced generalized fatigue and pain.  (See AR at 871.)  These notes indicate that Plaintiff's symptoms progressed until Dr. Haas diagnosed Plaintiff with MELAS, which Dr. Biggs describes as consistent with the genetic defect, including generalized muscle weakness, chronic pain syndrome, and other mitochondrial metabolism disorders.  (Id. at 872.)  In one note written in November of 2017, Dr. Biggs reported that Plaintiff mentioned being bedridden for the past three years, and had been selected for a clinical trial for a new medication to address mitochondrial disorders.  (See id. at 870.)

In the multiple impairment questionnaire—dated April 17, 2018, Dr. Biggs assessed several severe limitations to Plaintiff's performance during an eight-hour workday, including that Plaintiff could stand or walk for less than one hour, must frequently elevate her legs to waist level when sitting, and that she would frequently experience pain and fatigue severe enough to interfere with her attention.  (See id. at 1267-68.)  Dr. Biggs assessed that Plaintiff's symptoms leading to these limitations had been present since "birth, worsening with age."  (Id. at 1269.)  Importantly, Dr. Biggs assessed that as a result of her condition and the complexity of her symptoms, Plaintiff's symptoms were frequently severe enough to interfere with her attention and

concentration—and that Plaintiff would need allowances for frequent time off-task, unscheduled breaks, and absences from work.  (See id. at 24, 1268.)

**C.   N.P. Batac**

Nadine Batac, N.P., first evaluated Plaintiff in July of 2016 as part of Plaintiff's consultation with providers at Synovation Medical Group.  (Id. at 2105-06.)  N.P. Batac's progress notes dated through April 30, 2018, document Plaintiff's course of pain management treatment.  (See, e.g., id. at 1897-1901 (documenting progressive pain and mobility problems); 2009-13 (documenting chronic pain that started "many years ago" in January of 2017); 2019 (recommending follow-up appointment with neurology consult to address "possible central component of pain" in July of 2016); 1959 (noting "chronic muscle pain" that was described as aching and burning in May of 2017 and opioid intolerance); 2017-18 (describing a slow antalgic gait, difficulty standing, and the use of a wheelchair for mobility in July of 2016).)

After Plaintiff's MELAS diagnosis at UCSD, N.P. Batac's treatment notes explain that Plaintiff's symptoms were consistent with the condition, noting that Plaintiff exhibited symptoms such as chronic fatigue, decreased range of motion, impaired sleep, muscle atrophy, spasms and weakness, neglect, and sensitivity to touch or cold, all of which interfered with Plaintiff's ability to perform activities of daily living.  (See id. at 1256.)  Clinical and laboratory findings are included with a pain assessment dated August 1, 2018, which indicate tenderness to palpitation of the paraspinal musculature, bilateral lower extremity paresthesia, decreased lower extremity reflexes, joint pain, and severe pain in Plaintiff's arms and hands.  (Id. at 1254.)  N.P. Batac noted that Plaintiff's MELAS diagnosis was accomplished with the "aid of neurology, internal medicine, metabolic [and] genetic specialists.  (Id.)  N.P. Batac also assessed a number of severe limitations that Plaintiff would experience with working, including that her pain got worse with "walking, sitting, bending, extension, twisting, working [and] exercising, fatigue, stress, noise, traveling . . ." (Id. at 1255)  Additionally, the pain assessment opines that Plaintiff could sit for less than one hour, would need to get up frequently

when sitting, and move around frequently for at least ten to sixty minutes at a time.  (Id. at 1258.)  Aggravating factors of Plaintiff's symptoms in a work environment mentioned earlier in the pain assessment, according to N.P. Batac, would make Plaintiff's pain progress to the point of "risking medical crisis," and Plaintiff would frequently be absent from work three times or more a month.  (See id. at 1260.)  N.P. Batac noted that in her best estimate, the symptoms and limitations included in the pain assessment and progress reports were present since 2013.  (See id. at 1260.)

**D.    Dr. Haas**

Richard Haas, M.D., a genetic and mitochondrial disease expert who is the director of the Mitochondrial Disease Laboratory at the UCSD Medical Center, evaluated Plaintiff at the culmination of a series of diagnostic tests related to symptoms of fatigue, muscle cramps, pain, cognitive decline, exercise intolerance, and an inability to stand without support beginning in August of 2016 at UCSD.  (See id. at 1794, 1813, 1804.)  Dr. Haas's treatment notes, which extend into 2017, explain that Plaintiff had been experiencing "increasing fatigue, cognitive decline, and exercise intolerance" and presented with "chronic fatigue and pain refractory to medical treatment."  (See id. at 1804.)  After noting various neurological symptoms and a mitochondrial test result that was consistent with MELAS, (see, e.g., id. at 1804), Dr. Haas ordered an "mtDNA sequencing and deletion analysis," as well as a muscle biopsy test in order to determine the correct course of treatment for Plaintiff.  (See id. at 1805.)  Dr. Haas's general examination findings note that Plaintiff "has normal muscle tone and power is generally reduced with proximal power 4/5 arms and 4-/5 hip flexion and normal appendicular and truncal coordination with a shuffling gait and definite component of overlay."  (Id. at 1806.)

In a subsequent undated letter, Dr. Haas noted that Plaintiff was diagnosed with MELAS through genetic testing that confirmed the associated genetic mutation after "numerous clinicians were unable to diagnose her with any condition that would explain her varied symptoms."  (Id. at 2269.)  The letter notes that Plaintiff's records and patient

history indicate that "she has experienced symptoms of her disease for a number of years" prior to Dr. Haas's interaction with her, and that "[Plaintiff] stopped working regularly in 2012 due to her medical problems." (Id.)

**E.    Non-Examining Physicians Drs. Stuart Laiken and A. Nasrabadi**

In addition to citing treating physicians' opinions, the ALJ cited to non-examining agency medical consultants' review of Plaintiff's medical records in finding that Plaintiff was not disabled between September 14, 2012 and March 31, 2013. (See id. at 22-23.) Stuart Laiken, M.D., and A. Nasrabadi, M.D., reviewed Plaintiff's medical records, as well as "additional records supplied" upon Plaintiff's application for reconsideration of the agency's denial of her benefits. (See id. at 157-162) (affirming reviewing physician's opinion that the medical evidence did not come from the relevant time period).) In concluding that the agency's initial determination was correct, Dr. Laiken mainly discussed Dr. Shima's treatment notes and his letter noting that Plaintiff had been disabled since 2012:

> Claimant's assessment of her own condition does not constitute an acceptable medical source. Dr. Shima's records are mostly illegible but clearly contain no evidence that claimant had cardiac disease of any type and no cardiac symptomatology. Furthermore, claimant went to work as an animal behaviorist after the prior denial, with L/C up to 40 lbs. This would be highly unusual for an individual with . . . cardiac disease. Dr. Shima appears to be an alternative medicine practitioner. Her submitted patient registration form for this claimant in which the initially written date is crossed out and 2012 inserted. Hence, it is not clear that this was actually written in 2012. Search of Medical Board Records reveals that his license was suspended and he is now on probation with practice restrictions. His letter is given little weight due to the observations cited above. DOD records mention CABG in 2005 and stenting. However, there are no records to support any of this and no evidence of function limiting cardiac symptomatology. In lieu of any real function information (only illegible notes from an alternative medicine practitioner who notes no clearly acceptable MDIs for the time period in question) this case remains IE prior to DLI.

(Id. at 159.)  These findings were then affirmed by Dr. Nasrabadi.  (Id.)

The agency medical consultants concluded that "there is insufficient evidence to evaluate [Plaintiff's] claim."  (See id. at 144; 140-45.)

## IV.   DISPUTED ISSUES

As reflected in the parties' cross-motions for summary judgment, Plaintiff contends that the ALJ committed three errors:

1.   The ALJ improperly evaluated the medical opinion evidence of Doctors Richard Haas, Gary Shima, and Andrew Biggs, as well as Nurse Practitioner Nadine Batac.  (Pl.'s Mot. Summ. J., ECF No. 15 ("Pl.'s MSJ") at 19; Def.'s Cross-Mot. Summ. J., ECF No. 19 ("Def.'s MSJ") at 2.)

2.   The ALJ improperly evaluated Plaintiff's subjective symptom testimony.  (Pl.'s MSJ at 25; Def.'s MSJ at 2.)

3.   The ALJ improperly determined Plaintiff's retained Residual Functional Capacity ("RFC").  (Pl.'s MSJ at 24; Def.'s MSJ at 2.)

## V.   STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision.  42 U.S.C. § 405(g).  The scope of judicial review is limited, and the denial of benefits will not be disturbed if it is supported by substantial evidence in the record and contains no legal error.  See, e.g., Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012), superseded by regulation on other grounds.

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence and based on the application of correct legal standards."  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (per curiam).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  Substantial evidence means "more than a mere scintilla but less than a preponderance."  Id.  In determining whether the Commissioner's decision is supported by substantial evidence,

the Court must "weigh both the evidence that supports and the evidence that detracts from the ALJ's factual conclusions." Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation omitted).  When evidence is "susceptible to more than one rational interpretation, one of which supports the ALJ's decision," the Court must uphold the ALJ's conclusion.  Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  The Court may consider "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [he or she] did not rely."  Revels v. Berryhill, 874. F.3d 648, 654 (9th Cir. 2017) (internal quotation omitted).

Error in a social security determination is subject to a harmless-error analysis. Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012).  "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the ALJ's ultimate conclusion."  Molina, 674 F.3d at 1115 (internal quotation omitted).  The Court must "look at the record as a whole to determine whether the error alters the outcome of the case.  Id.  An error that is "inconsequential to the ultimate nondisability determination" is harmless.  Id. (internal quotation omitted).

## VI.   DISCUSSION

This case turns on the difficult question of when Plaintiff's mitochondrial encephalomyopathy, lactic acidosis, and stroke-like symptoms ("MELAS") became disabling.  See Swanson v. Sec'y of Health & Hum. Servs., 763 F.2d 1061, 1065 (9th Cir. 1985) ("the critical date is the date of the onset of disability, not the date of the diagnosis") (emphasis omitted).  The ALJ found that Plaintiff was not disabled between her alleged onset date of September 14, 2012, and her DLI of March 31, 2013.  (See AR at 27.)  Plaintiff contends that the ALJ reached this decision erroneously based on each of the three challenges set forth in Section IV, supra.  The Court concludes that the ALJ committed legal error in evaluating the medical opinion evidence available in the Administrative Record and **RECOMMENDS** that the case be remanded to the Social

Security Administration for further development of the record.[4]

**A.    The ALJ's Evaluation of Medical Opinion Evidence**

Plaintiff contends that the ALJ improperly rejected the medical opinions of Doctors Gary Shima, Andrew Biggs, and Richard Haas, as well as Nurse Practitioner Nadine Batac under the "supportability" and "consistency" standards under 20 C.F.R. § 404.1520c(c).  (See Pl.'s MSJ at 23 ("[t]he ALJ's decision does not comply with the requirement that he must 'articulate' how he considered, at the very least, the consistency and supportability of the opinions from the treating sources in order to determine how persuasive those opinions are").)

**1.    Applicable law**

In evaluating the intensity and persistence of a claimant's symptoms, an ALJ must consider all the available evidence from the claimant's "medical sources and nonmedical sources about how [the claimant's] symptoms affect [her]."  20 C.F.R. § 404.1529(c)(1). Medical opinions are more persuasive if they are supported by explanations and objective medical evidence, 20 C.F.R. § 404.1520c(c)(1), and if they are consistent with the evidence from other medical and nonmedical sources, id. § 404.1520c(c)(2). Furthermore, the medical opinion of a specialist "about medical issues related to his or her area of specialty" is more persuasive than that of a non-specialist.  Id. § 404.1520c(c)(4).  The purpose, length, and extent of a medical source's treatment relationship with the claimant, the kinds and extent of examinations and testing performed, and the frequency of the claimant's visits, may also demonstrate a medical source's knowledge and understanding of the claimant's impairments.  Id. § 404.1520c(c)(3)(i)-(v).  In addition, a medical source's familiarity with other evidence in a claim may make the medical source's opinion more persuasive.  Id. § 404.1520c(c)(5).

Revised regulations apply to an ALJ's analysis of medical opinion evidence for

---

[4] As explained more fully below, resolution of the first issue obviates the need to address the issues of Plaintiff's subjective symptom testimony and the ALJ's determination of her RFC.

claims filed on or after March 17, 2017.  See Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01, at 5867-68 (Jan. 18, 2017).  Under these rules, the ALJ is no longer required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."  20 C.F.R. § 404.1520c(a).  The ALJ must instead consider all the medical opinions in the record and evaluate each medical opinion's persuasiveness using factors including supportability, consistency, relationship with the claimant, and specialization.  Id.  The two most important factors in determining a medical opinion's persuasiveness are the opinion's "supportability" and "consistency."  20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must articulate "how [he or she] considered the supportability and consistency of factors for a medical source's medical opinions . . . in [his or her] decision."  20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2).

Related to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions . . . will be."  20 C.F.R. §§ 404.1520c(c), 416.920c(c)(2).  For consistency, the "more consistent a medical opinion(s) is with the evidence from other medical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.320c(c)(2).  The ALJ is not required to explain how they considered other factors, unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record, but not identical.  See 20 C.F.R. §§ 404.1520c(b)(3), 416.1520c(b)(3).  Additionally, in reviewing the ALJ's decision, the Court must consider whether the ALJ's analysis has the support of substantial evidence. See 42 U.S.C. § 405(j); see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).

The revised rules do not, however, replace all previous caselaw within the Ninth Circuit.  For example, ALJs still may not cherry-pick evidence in discounting a medical opinion.  See Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014); see also Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001) (reversing an ALJ's selective reliance

"on some entries in [the claimants records while ignoring] the many others that indicated continued, serious impairment"). Nor, for instance, may the ALJ dismiss medical opinions without providing a detailed explanation for doing so:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his own conclusions. [They] must set forth [their] own interpretation and explain why they, rather than the doctors', are correct.

Regenmitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1299 (9th Cir. 1999) (citation omitted).

Essentially, although the revised regulations eliminate the previous hierarchy of medical opinion testimony that gave special status to treating physicians, the ALJ still must provide sufficient reasoning for federal courts to conduct a meaningful review. See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection" of certain evidence); see also Treichler v. Comm'r of Soc. Sec. Admin, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").

## 2. Dr. Haas

The ALJ found Dr. Haas's opinion regarding Plaintiff's disability before her DLI, or "any periods substantially before [Dr. Haas] started treating the claimant in 2016," non-persuasive, (id. at 24), providing three reasons for this finding. First, the ALJ reasoned that Dr. Haas, by his own admission, did not begin treating Plaintiff until 2016, well after Plaintiff's DLI, rendering any opinions about Plaintiff's ability to work before her DLI unreliable. (Id.) Second, The ALJ noted that Dr. Haas's statement about Plaintiff's inability to work regularly since 2012 was "somewhat inconsistent" with

Plaintiff's own work history report in her benefits application, which lists her work as an animal trainer continuing until 2015, as well as "appear[ing] to be based on what Dr. Haas was told by the claimant, rather than his own knowledge. (Id. (citing AR at 386).) Finally, the ALJ noted that Dr. Haas's opinion was inconsistent with other physical examination findings in the record indicating normal gait, stance, lower extremity strength, and ejection fraction in 2016 and 2017. (Id.)

Plaintiff contends that the ALJ committed legal error by ignoring Dr. Haas's opinions, which the ALJ should have considered under the regulations that apply to the Social Security Administration. (See Pl.'s MSJ at 21 (citing 20 C.F.R. § 404.1520c(c)(1)).) Specifically, Plaintiff points to Dr. Haas's finding that Plaintiff experienced "severe chronic fatigue, muscle weakness, an inability to sustain activities for any substantial duration, pronounced ataxia, and 'longstanding' chronic muscle spams [sic], which causes difficulty with walking and standing." (Id. (citing (AR at 2269)).)

Apart from the general contention that the ALJ's findings are supported by substantial evidence, the Commissioner argues in response that Dr. Haas did not provide any medical opinions the ALJ was required to evaluate because he did not "assert any functional limitations that Plaintiff had." (Def.'s MSJ at 7 n.5 (citing 20 C.F.R. § 404.1513(a)(2)).)

As an initial matter, the Court disagrees with the Commissioner's contention that Dr. Haas did not present a medical opinion about Plaintiff's disability that the ALJ was required to address. Although Dr. Haas did not express his opinion in the language used by the agency—referencing specific functional limitations or the amount of time that Plaintiff would be absent from work—he clearly opined that Plaintiff's symptoms were sufficiently serious to prevent her from working regularly. (See AR at 2269); see also Bryan S. v. Kijakazi, Case No. 6:21-cv-00972-MK, 2022 WL 3211621, at *3 (D. Or. Aug. 9, 2022) (noting that it is the ALJ's responsibility to translate a medical opinion into a functional limitation or provide legally sufficient reasons for rejecting it).

Apart from the Commissioner's arguments about the form of Dr. Haas's opinion,

the ALJ's substantive reasons for disregarding Dr. Haas's opinion were not supported by substantial evidence such that meaningful review can be conducted of his findings.  First, even assuming that Dr. Haas based his opinion about the onset of Plaintiff's symptoms on Plaintiff's reports about her medical history and symptoms, "a patient's report of complaints, or history, is an essential diagnostic tool."  Abramson v. Comm'r of Soc. Sec. Admin., No. CV-19-00362-TUC-RM (DTF), 2020 WL 7022260, at *7 (D. Ariz. Nov. 30, 2020) (quoting Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003)) (internal quotations omitted).  A physician's evaluation of a patient's subjective statement of their symptoms "hardly undermines [the physician's] opinion as to the [the patient's] functional limitations."  Id.  This is especially true for a rare genetic disorder such as MELAS, which evades detection and was only definitively diagnosed, by the ALJ's own admission, after Plaintiff had been evaluated by numerous practitioners and reported a persistence of her symptoms through 2016.  (See AR at 23.)

Second, the ALJ failed to explain why Plaintiff's work history report was given greater weight than Dr. Haas's opinion about when Plaintiff's symptoms caused her to become disabled.  Although the ALJ noted that Dr. Haas's observations about Plaintiff's work history were "somewhat inconsistent" with her own reports in her application for benefits, citing a self-reported chart that lists Plaintiff's work history as an animal trainer continuing until March of 2015, (see id. at 23, 386), simply concluding that two sources of information are inconsistent, without further analysis, is insufficient for the Court to conduct a meaningful review of the ALJ's reasoning for discounting Dr. Haas's opinions. See, e.g., Langdon v. Astrue, No. 12–CV–2624 AJB (NLS), 2013 WL 5592483, at *18 (S.D. Cal. Oct. 9, 2013) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)) ("if the ALJ's explanation is inadequate, the reviewing court may not search the record for reasons that support his decision.").  Moreover, given Dr. Haas's specialization in genetic research and identifying conditions such as MELAS, Dr. Haas's opinion was entitled to increased weight under the factors listed in 20 C.F.R. § 404.1520c(c); see also Revels, 874 F.3d at 654  ("A doctor's specialty is especially relevant with respect to

diseases that are 'poorly understood' within the rest of the medical community."). While Dr. Haas's treating relationship with Plaintiff is noted, the ALJ did not assign greater weight to Dr. Haas's opinion as a result of this relationship, which included multiple consultation sessions, close review of Plaintiff's medical records, and specialized tests that identified the genetic mutation responsible for Plaintiff's MELAS. (<u>See</u> AR at 1804.)

Similarly, the ALJ did not explain why or how other evidence in the record of Plaintiff's "normal physical examination findings of gait, stance, and lower extremity strength, as well as a normal ejection fraction in 2016-2017," undermined or was inconsistent with Dr. Haas's opinion. (<u>See</u> AR at 23.) The impairments and complaints of pain and fatigue are well-documented in Plaintiff's voluminous medical records, and Dr. Haas's treatment records not only note other healthcare providers' opinions about these symptoms, but also include his own analysis to account for Plaintiff's symptoms in light of her confirmed MELAS diagnosis. (<u>See, e.g.</u>, <u>id.</u> at 1804 (noting chronic fatigue).)

The quoted sentence above demonstrates that the ALJ attempted to reject Plaintiff's reports of her symptoms and Dr. Haas's consistent opinion about the onset of these symptoms on the grounds that other objective medical evidence did not support the alleged intensity and debilitative effects of these symptoms before the DLI. While it is true that "objective medical evidence from an acceptable medical source" must show that a claimant has a medical impairment or impairments that "could reasonably be expected to produce" the claimant's alleged symptoms, 20 C.F.R. § 404.1529(a), the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR at 22.) The ALJ's analysis, therefore, did not center on the existence of Plaintiff's impairments, but rather with the intensity and persistence of Plaintiff's fatigue and other symptoms between the alleged onset date and the DLI. Once a claimant has shown that she has a medically determinable impairment or impairments that could reasonably be expected to produce her pain or other symptoms,

however, her statements about the intensity and persistence of her fatigue cannot be rejected "solely because the available objective medical evidence does not substantiate" them.  20 C.F.R. § 404.1529(c)(2).  Accordingly, in addition to failing to articulate why the ALJ gave Dr. Haas's opinion less weight than other objective evidence within the administrative record, the ALJ erred by failing to provide substantiating objective medical evidence in rejecting Plaintiff's testimony concerning her fatigue and other symptoms.

Finally, the ALJ erred in giving reduced weight to Dr. Haas's opinion on the grounds that he had not examined Plaintiff until 2016.  Medical reports—especially in relation to a rare genetic disorder such as MELAS—will inevitably be "rendered retrospectively and should not be disregarded solely on that basis."  Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1998).  The ALJ did not provide any other legally sufficient reasons for rejecting Dr. Haas's opinion, and the retrospective nature of his opinion alone cannot support the ALJ's decision.

Considering the discussion of Dr. Haas's opinion and treatment notes as a whole, the Court concludes that the ALJ failed to articulate sufficient bases for finding Dr. Haas's opinion unpersuasive.  Although the ALJ "can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings,'" Garrison v. Colvin, 759 F.3d 995, 1013 (9th Cir. 2014) (internal citations omitted), the ALJ is required to do more than merely state conclusions.  Simply stating that a medical opinion is generally consistent (or inconsistent) with medical records "without specifically discussing the consistency of such findings with the rest of the record, does not make it so."  Jones v. Comm'r of Soc. Sec. Admin., Case No.: 1:19-cv-00109-REB, 2020 WL 7029143, at *7 (D. Idaho Nov. 30, 2020).

### 3.   Dr. Biggs and N.P. Batac

The ALJ found both Dr. Biggs and N.P. Batac's medical opinions non-persuasive, concluding that: (1) neither source had treated Plaintiff prior to her DLI, and that their

opinions therefore "have no basis in personal knowledge or observation to affirm that the degree of limitations . . . existed prior to [Plaintiff's] date insured," (see id. at 24); and (2) that even if intended to be rendered retrospectively, these opinions were inconsistent with objective findings in the record indicating that "as recently as 2016 and 2017, the claimant had normal physical examination findings of gait, stance, and lower extremity strength, as well as normal ejection fraction."[5]   (See id. at 386.)

Plaintiff contends that the ALJ committed legal error by ignoring these providers' assessments, which he should have considered relevant under the regulations that apply to the Social Security Administration.  (See Pl.'s MSJ at 20.)  Pointing to Dr. Biggs and N.P. Batac's opinions based on Plaintiff's MELAS diagnosis and symptoms of pain and fatigue throughout their progress notes, Plaintiff argues that these symptoms were consistent with her diagnosis, and that the ALJ should not have assigned them a lower weight than other factors in the record.  (See id.)

The Commissioner argues in response that (1) the ALJ "reasonably noted that both Dr. Biggs and Ms. Batac did not treat Plaintiff prior to her date last insured," (2) these opinions assessed extreme limitations that Dr. Biggs and N.P. Batac failed to explain how they existed prior to Plaintiff's DLI, and (3) even if the opinions were intended to be interpreted retrospectively, they were inconsistent with other objective findings of normal gait, stance, strength, and ejection fraction.  (See Def.'s MSJ at 7-8.)

The ALJ's reasoning in rejecting the opinions of Dr. Biggs and N.P. Batac was not supported by substantial evidence.  As noted above, the fact that an opinion is rendered retrospectively cannot, in and of itself,[6] be used as a justification for rejecting a medical

---

[5] These factors were also cited in the ALJ's evaluation of Dr. Haas's opinion.  See Section VI.A.2, supra.

[6] The Commissioner argues that the "ALJ reasonably found [Dr. Biggs and N.P. Batac's] opinions unsupported because they failed to explain how the limitations they assessed existed before Plaintiff's date last insured."  (Def.'s MSJ at 8.)  There is no discussion in the ALJ's written decision, however, related to the reasoning supporting Dr. Biggs and N.P. Batac's opinions.  (Cf. AR at 24.)  Instead, the

opinion—especially in the case of a disease such as MELAS that by its very nature evades detection by normal metrics.  See, e.g., Kara M. v. Comm'r of Soc. Sec., Case No. 3:21-05673-TLF, 2022 WL 2072203, at *4 (W.D. Wash. June 9, 2022) (quoting Smith, 849 F.2d at 1225) ("medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis.") (internal quotations omitted).

Furthermore, the alleged inconsistency between N.P. Batac and Dr. Biggs's opinions and other examination results in the record—at the very least—created an ambiguity that the ALJ was required to address in further detail.  Merely noting that there are inconsistencies between treating providers' opinions and other findings in the record is not sufficient to reject those opinions.  See, e.g., Julene E.S. v. Comm'r of Soc. Sec., Case No. 22-CV-5158 TLF, 2022 WL 17261676, at *6 (W.D. Wash. Nov. 29, 2022) (reversing when ALJ erred by cherry-picking routine observations that did not undermine the consistency of treating physician's opinion when compared with a holistic review of the record); see also Diedrich v. Berryhill, 874 F.3d 634, 642 (9th Cir. 2017) (discussing the ALJ's cherry-picking of the absence of certain symptoms from medical evidence as opposed to undertaking a "broader development" of the evidence in its entirety); Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (noting that an ALJ has a duty "to fully and fairly develop the record and to assure the claimant's interest are considered.").  Here, the ALJ did not explain how some normal physical examination findings of gait, stance, and ejection fraction in the record undermined the well-documented reports of neurological symptoms in Dr. Biggs and N.P. Batac's progress notes and opinions.  (Compare AR at 24 ("[Plaintiff] had normal physical examination findings of gait, stance, and lower extremity strength, as well as a normal ejection fraction."), with AR at 1248-52; 1254-60

---

ALJ merely noted an inconsistency between the providers' opinions and other objective evidence in the record in concluding that these opinions were "non-persuasive."  (Id.)  It is not the Court's job to address *post hoc* rationalizations of the ALJ's reasoning.  See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) ("[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.")

(assessing symptoms of muscle pain, fatigue, and other physical limitations).  In sum, the ALJ's determination that these providers' opinions were inconsistent with other evidence in the record was not supportable by substantial evidence.

### 4.    Dr. Shima

In finding Dr. Shima's opinion non-persuasive, the ALJ noted that two non-examining state medical consultants, Stuart Laiken, M.D., and A. Nasrabadi, M.D., who had reviewed Plaintiff's medical records in 2019, reasoned that there was insufficient evidence to conclude that Plaintiff had been disabled before the DLI.  (See id. at 23 (citing id. at 159-60).)  Referencing the non-examining physicians' opinions, the ALJ stated:

> On patient registration forms for holistic medical treatment with Dr. Gary Shima, the date/year of execution [sic] of these forms was twice crossed out and apparently changed to 2012.  This circumstance, along with Dr. Shima's license suspension and subsequent probation and practice restriction, were flagged by the State agency medical consultant who reviewed this claim at the initial and reconsideration levels of administrative review . . . [h]owever, assuming that the claimant's related treatment notes . . . do reflect holistic medicine treatment beginning in 2012, there is no clinical diagnosis indicating the claimant's MELAS impairment began at this time, nor (as discussed herein and further below) is there sufficient proof in all the available treatment records that the severity of the claimant's impairments caused greater restrictions than as included in the residual functional capacity set forth above, prior to her date last insured.

(Id. at 22.)

After citing the non-examining physicians' opinions, the ALJ reasoned that although Dr. Shima reported that he prescribed alternative medical treatments for "various medical symptoms" between 2012 and 2014, Dr. Shima "did not support any opined limitations arising from the claimant's impairments before the claimant's date last insured."  (Id. at 23.)  In support of this conclusion, the ALJ notes that Dr. Shima acknowledged that Plaintiff was not diagnosed with MELAS until 2016, after numerous specialist visits.  (Id.)

Plaintiff contends that the ALJ improperly credited the findings of the non-examining physicians. (Pl.'s MSJ at 22.) Pointing to Dr. Shima's treatment notes and records of Plaintiff's symptoms that predate her DLI, (see id. at 21 (citing AR at 472-74)), Plaintiff argues that the non-examining state consultants' conclusions that the evidence in Plaintiff's records are insufficient to demonstrate that she was disabled before the DLI are fundamentally different than a definitive finding that Plaintiff was not disabled before the DLI. (See id. at 22.) Plaintiff argues that her MELAS progressed slowly until her severe symptoms began to be documented by Dr. Shima in 2012. (See id. at 20.)

In response, the Commissioner notes that Dr. Shima's check-box questionnaire assesses extreme limitations that go as far back as 2012, while his treatment notes describe Plaintiff's condition as "progressing rapidly" in 2015. (See Def.'s MSJ at 6 (citing AR at 2164-65).) In addition to failing to support Dr. Shima's opinion that Plaintiff was disabled in 2012, the Commissioner contends that these conflicting notes demonstrate Dr. Shima's lack of understanding of Plaintiff's condition, despite years of treating Plaintiff's alleged symptoms.[7]

Replying to the Commissioner's contentions about Dr. Shima's inconsistent treatment notes between 2012 and 2015, Plaintiff argues that the Commissioner and the ALJ failed to consider how two possibilities could be true at once. (See Pl.'s Reply in Supp. of Pl.'s Mot. for Summ. J., ECF No 20 ("Pl.'s Reply") at 3.) That is, Plaintiff could have been disabled in 2012 such that she was unable to work, while still progressing to the point of being "more wheelchair bound" by 2015. (See id.)

The Court agrees with Plaintiff's arguments here. While the ALJ's findings

---

[7] The Court notes that in finding Dr. Shima's opinions non-persuasive, the ALJ also cited to previously addressed medical findings of Plaintiff's normal gait, stance, extremity strength, and ejection fraction. (See AR at 23.) For the reasons previously stated in Sections VI.A.2 & 3, supra, the ALJ's conclusory citations to these findings without further analysis in the context of the entire record are insufficient to for the Court to conduct meaningful review of the ALJ's findings in this respect.

regarding Dr. Shima's opinions are discussed in greater detail than those of other treating physicians in the administrative record, the ALJ's assessment of the ambiguities and inaccuracies in Plaintiff's course of treatment with Dr. Shima—even if true—triggered a duty for the ALJ to further develop the record to resolve these issues.  See Julene E.S., 2022 WL 17261676, at *8 (citing Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)) ("The existence of ambiguous evidence triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (internal quotations omitted).  Although the ALJ was entitled to weigh the evidence in the record regarding Dr. Shima's treatment of Plaintiff, he failed to compare the asserted lack of support that the onset date of Plaintiff's MELAS impairment occurred before Plaintiff's DLI with other evidence throughout Dr. Shima's materials and the record as a whole noting Plaintiff's symptoms of fatigue and pain that were unexplained by her healthcare providers until her diagnosis.  (See, e.g., AR at 472, 474-75, 491, 2255.)  Indeed, the ALJ supported his conclusion that Dr. Shima's opinions concerning Plaintiff's disability onset date occurring in 2012 lacked support by stating that "Dr. Shima acknowledged that the claimant was not diagnosed with MELAS until about 2016."[8]  (See AR at 23.)  The ALJ's rejection of Dr. Shima's opinion on this basis was not a meaningful attempt to address perceived ambiguities in the record, especially given that the ALJ acknowledged Dr. Shima treated Plaintiff for "various medical symptoms" between 2012 and 2014.  (See id.); see also Svaldi v. Berryhill, 720 F. App'x

---

[8] The failure of treating physicians to diagnose Plaintiff with MELAS until after the alleged onset date of her impairments is repeatedly used by the ALJ as justification to afford the treating physicians' retrospective opinions in the record little to no weight.  (See, e.g., AR at 22-24.)  The ALJ's rejection of physicians' opinions based on failures to explicitly support their findings of Plaintiff's disability onset dates seems to be an attempt to implicitly impose a requirement that there be contemporaneous medical evidence of Plaintiff's impairment.  (See, e.g., id. at 66 (discussing lack of contemporaneous medical evidence).)  These statements demonstrate that the ALJ failed to recognize the very nature of an inferential diagnosis, which presupposes that there may be little contemporaneous medical evidence and directs the ALJ to consider longitudinal medical evidence of the claimant's disability in the record as a whole.  See Determining the Established Onset Date (EOD) In Disability Claims, SSR 18-01p (2018), 2018 WL 4945639, at *6; see also Dory L. v. Saul, No. 19 CV 50106, 2020 WL 5763612, at *5 (N.D. Ill. Sept. 28, 2020) (quoting Walker v. Berryhill, 900 F.3d 479, 483 (7th Cir. 2018) ("That a precise onset date is not established by the medical evidence does not doom a claim for disability.")).

342, 344 (9th Cir. 2017) (where medical opinions "refer back" to the same chronic condition and symptoms discussed in physician's opinion "from several years prior," the "fact that those opinions were issued significantly after [the plaintiff's] DLI does not undercut the weight those opinions are due."); D.K. v. Kijakazi, No. 20-CV-07821-LB, 2021 WL 3856696, at *5 (N.D. Cal. Aug. 30, 2021) (citing Smith, 849 F.2d at 1225–26) ("Later-acquired medical evidence can be used to show the existence of a medically determinable impairment as of an earlier date, so long as the earlier onset can be reasonably inferred from the objective medical evidence.").

Moreover, as Plaintiff correctly notes, the opinions of the non-examining physicians who concluded that insufficient evidence existed to determine whether Plaintiff was disabled for the purposes of receiving benefits are decidedly different than an opinion by a healthcare provider that Plaintiff was *not* disabled prior to her DLI.  (See Pl.'s MSJ at 22 (citing Manteau v. Colvin, No. ED CV 12–1153–PLA, 2013 WL 1390018, at *7 (noting that a physician's opinion of insufficient evidence to demonstrate a determinable impairment before the DLI was not a proper basis to conclude that the plaintiff had no medically determinable impairment)).)  While perhaps implicitly noted by the ALJ, these opinions created an inconsistency with Dr. Shima's documented opinion that the ALJ was required to address and explain why they were afforded greater weight than Dr. Shima's treatment notes and opinions.[9]

The ALJ's opinion, therefore, falls short of including sufficient analysis such that the Court can conduct a meaningful review of its conclusions.  By the ALJ's admission, Dr. Shima's progress notes account Plaintiff's treatment for symptoms that could have been related to her MELAS impairment starting in 2012, and include a retrospective

---

[9] The ALJ apparently recognized this discrepancy in his opinion.  (See AR at 23 ("[t]he state agency medical consultants determined that the claimant's condition was not disabling on any date through 03/31/2013 . . . [t]he undersigned finds that the prior administrative findings are persuasive to the important extent that the medical evidence available at the time of the state agency consultant's review (or even now) is insufficient to lead to a finding of disabling limitations, before the date last insured.").)

opinion that these symptoms were related to her diagnosis that was confirmed at a later date.  The ALJ was required to address these findings and explain why they were rejected in favor of his own conclusions about the evidence in the record.  See, e.g., Melinda C. v. Saul, No. CV 19-5827-E, 2020 WL 2490086, at *2 (C.D. Cal. May 14, 2020) (explaining that an ALJ must set forth *some* reasoning for rejecting a treating physician's opinion); see also Lusardi v. Astrue, 350 F. App'x 169, 183 (9th Cir. 2009) ("[I]f the ALJ rejects significant probative evidence, he must explain why.").  The ALJ's evaluation of Dr. Shima's medical opinion evidence was therefore unsupported by substantial evidence.

### 5.    Conclusion

The ALJ failed to offer specific and legitimate reasons supported by substantial evidence for rejecting the opinions of Doctors Haas, Biggs, and Shima, as well as N.P. Batac.  This error was not inconsequential to the ALJ's ultimate determination that Plaintiff was not disabled between her alleged September 14, 2012, onset date and her March 31, 2013, DLI.  As will be explained in further detail below, the Court **RECOMMENDS** that this case be remanded on this basis.

### B.    Additional Assignments of Error

In addition to the contention that the ALJ improperly addressed medical opinion evidence discussed above, Plaintiff contends that the ALJ erred by improperly discounting Plaintiff's subjective symptom testimony and failed to support the RFC determination with substantial evidence.  (See Pl.'s MSJ at 24, 25.)  Although the ALJ's failure to properly evaluate medical opinion evidence is sufficient for the Court to conclude that remand is appropriate, Plaintiff's other assignments of error are discussed briefly in turn.  See, e.g., Benjamin S. v. Kijakazi, No. 1:21-cv-00414-CWD, 2022 WL 16948759, at *7 (D. Idaho Nov. 15, 2022) (declining to reach the plaintiff's subjective symptom testimony when the ALJ's analysis was affected by their failure to properly consider medical opinion evidence); Gregory T. v. Saul, No. 1:19-cv-03116-MKD, 2020 WL 4730966, at *9 (E.D. Wash. May 12, 2020) (declining to reach the plaintiff's subjective symptom testimony when medical opinion evidence needed to be reevaluated

on remand); <u>Linkswiler v. Colvin</u>, CASE NO. 3:16-CV-05158-DWC, 2016 WL 5817055, at *8 (W.D. Wash. Oct. 5, 2016) ("an evaluation of a claimant's credibility relies, in part, on an accurate assessment of the medical evidence") (citing 20 C.F.R. §§ 404.1529(c), 416.929(c))

### 1. Plaintiff's subjective symptom testimony

Plaintiff separately challenges the ALJ's opinion for failing to provide clear and convincing reasons when discrediting her subjective symptom testimony.  (<u>See</u> Pl.'s MSJ at 25-28 (citing SSR 16-3p, 2016 WL 1119029).)  Plaintiff argues that the ALJ failed to sufficiently assert why evidence in the record is not consistent with her allegations during her hearing with the ALJ, specifically: (1) that the ALJ did not demonstrate how Plaintiff's reported work history and her spouse's third-party function report undermine her testimony that she was unable to work full-time before her DLI in March of 2013 (<u>see id.</u> at 26:4-28:8); and (2) that the ALJ's purported reasons for rejecting her symptom testimony relied on incomplete evaluations of medical evidence.  (<u>See id.</u> at 26:11-13, 28:9-16.)

The Commissioner contends in response that the ALJ properly considered Plaintiff's subjective symptom testimony.  (<u>See</u> Def.'s MSJ at 11.)  Noting that the ALJ compared medical opinion evidence, as well as Plaintiff and her spouse's statements with other objective evidence in the record, the Commissioner argues that Plaintiff's arguments amount to a dispute over the ALJ's reasonable interpretation of the record, which the Court cannot evaluate anew and must therefore defer to the ALJ's opinion. (<u>See</u> Def.'s MSJ at 12 (citing <u>Terry v. Saul</u>, 998 F.3d 1010, 1013 (9th Cir. 2021)).)

### a. Applicable law

Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimants' testimony if there is no evidence of malingering.  <u>Carmickle v. Comm'r</u>, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence

establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains an adverse credibility finding must be based on clear and convincing reason") (internal quotation marks and citations omitted); see also Molina, 674 F.3d at 1112 (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (internal quotation marks and citations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (internal quotations omitted).  "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015).  Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." Holohan, 246 F.3d at 1208; see also Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

### b.    Analysis

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce some of the symptoms alleged, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence in the record.  (See AR at 22.)  In discussing Plaintiff's credibility about her reported symptoms during the hearing, the ALJ made several observations about other evidence in the record, both medical and non-

medical:

> [t]here is little evidence to support that the claimant's alleged serious limitations began prior to her date last insured of March 31, 2013, and substantial evidence shows that they did not. For example . . . the claimant's spouse, submitted a third-party function report dated August 13, 2018, stating then that the "claimant's health had declined rapidly in the last three years" (i.e., since August 2015) and that previously the claimant had been "ambulatory, reading, writing professionally, an animal behaviorist; traveled extensively specializing in equine behavior – researching and compiling data for a book", rather than being bedridden as claimed at the date of the third-party function report (5E/12).  The claimant was unclear in her testimony on whether her spouse was able to observe her condition in 2012.  In any event, as the claimant's spouse specifically reported that the claimant's health declined rapidly only well after her date last insured, i.e., starting in in [sic] 2015, the undersigned does not consider the spouse's third-party function report as evidence supporting the claimant's allegations of disability, with respect to the period before the date last insured (5E/12).  The claimant's own function report indicated that she had an electric wheelchair prescribed, but not until 2015 (4E/12).   The claimant also reported in her work history report that she worked as an animal behaviorist until March 2015 (6E). The claimant testified that much of her more recent income was derived through residual sales, but there is little evidence to corroborate this claim (Hearing Testimony).

Id.

At least one of the ALJ's reasons for discrediting Plaintiff's subjective symptom testimony was supported by clear and convincing reasons.  The ALJ properly noted that despite Plaintiff's testimony during the hearing that she stopped working regularly in 2012, her submitted work history report notes that she worked as an animal trainer until 2015 for eight hours a day, five days a week.  (See id. (citing AR at 386)); (see also id. at 68-69 (Plaintiff's description of her work from her alleged disability date through her DLI as based almost exclusively on residual sales of training materials).)  The evidence that the ALJ cited in discounting Plaintiff's statements about the severity of her

symptoms such that she stopped working regularly in 2012 was in direct contradiction with Plaintiff's explanation during the hearing that she worked by facilitating sales of her instructional DVDs after her alleged onset date, and the ALJ offered a specific reason for concluding that Plaintiff's testimony was not credible as to this basis.  Although the evidence in the record could reasonably be interpreted differently, it is not within the Court's purview to re-interpret sources in the record to reach a credibility finding.  See, e.g., Terry, F.3d at 1013 (noting that even when the evidence in the record is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's interpretation of evidence).

Most of the ALJ's reasons for discrediting Plaintiff's subjective symptom testimony, however, were insufficient to support his adverse credibility determination—owed mainly to the ALJ's failure to identify how these pieces of evidence were inconsistent with her testimony about her symptoms.  For example, the ALJ placed a great deal of weight on a third-party function report submitted by Plaintiff's spouse, dated August 13, 2018, which noted that Plaintiff's health had "'declined rapidly in the last three years'; (i.e. since August 2015)."  (See AR at 22 (citing id. at 381).)  As Plaintiff correctly notes, the ALJ failed to explain how a third-party function report noting that Plaintiff's health declined rapidly starting in 2015 such that she was bedridden in 2018 is inconsistent with Plaintiff's statements regarding her inability to work beginning in 2012.  (See Pl.'s MSJ at 26); see also Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014) (citing Smolen v. Chater, 80 F.3d 1273, 1287 n.7 (9th Cir. 1996)) ("impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day").

Additionally, failure of medical evidence to support a claimant's testimony, as opposed to its inconsistency with a plaintiff's subjective statements about their symptoms is a critical distinction.  While an inconsistency between the medical evidence and a claimant's subjective symptom testimony can qualify as a clear and convincing reason to reject a claimant's statements, a finding that a claimant's statements are not supported by

objective medical evidence in the record, standing alone, is not a clear and convincing reason.  See Rosel A. v. Saul, Case No.: 20cv1098-MSB, 2021 WL 2588156, at *6 (S.D. Cal. June 23, 2021) (citing Stone v. Berryhill, No. 3:17-CV-1689-W (RNB), 2018 WL 2317549, at *1, *5 (S.D. Cal. May 17, 2018)).

The Commissioner cites to multiple aspects of the ALJ's opinion discrediting Plaintiff's subjective symptom testimony, arguing that Plaintiff fails to contradict them. (See Def.'s MSJ at 10-11.)  None of the medical evidence cited by the ALJ, however, is actually inconsistent with Plaintiff's statements during the hearing that she was disabled within the meaning of the Social Security Act in between September of 2012 and March of 2013, the period of time between the alleged onset date and her DLI.  For instance, observations that evidence in the record indicates Plaintiff was not definitively diagnosed with MELAS until 2017, or that she was not prescribed a wheelchair until 2015, are not responsive to, and do not directly contradict Plaintiff's contention that she experienced bouts of overwhelming fatigue and muscle pain such that she could not work full time after her alleged onset date in 2012.  See Section VI.A.4, supra.  The ALJ was not permitted to merely list medical findings that indicated a lack of support for Plaintiff's claims—rather, he should have specifically asserted what parts of Plaintiff's testimony are inconsistent with those pieces of medical evidence.  See Cassandra E. L. v. Saul, No. 5:19-CV-1783-KES, 2020 WL 2556348, at *6 (C.D. Cal. May 20, 2020); see also Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015) ("We hold that an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination.")  The ALJ's opinion therefore did not properly discredit Plaintiff's testimony based on an inconsistency with objective medical evidence in the record.

Moreover, an evaluation of Plaintiff's credibility relied, at least in part, on the ALJ's accurate assessment of medical opinion evidence.  See, e.g., Linkswiler, 2016 WL 5817055, at *8 (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)).  As discussed in Section VI.A. supra, the ALJ erred in evaluating the medical opinion evidence of Doctors Haas,

Biggs, and Shima, as well as N.P. Batac.  Because the case should be remanded for further consideration of medical opinion evidence, the ALJ should also reevaluate Plaintiff's credibility anew on remand.  See id.

### 2.    The ALJ's RFC determination

In addition to challenging the ALJ's evaluation of Plaintiff's subjective symptom testimony, Plaintiff contends that the ALJ's determination of her RFC after evaluating the medical opinion evidence in the record was not supported by substantial evidence.  (See Pl.'s MSJ at 24.)  Because the RFC determination necessarily involves the evaluation of medical opinion evidence, the Court cannot meaningfully address whether the ALJ's RFC determination was proper.  See, e.g., James M. C. v. Comm'r of Soc. Sec., CASE NO. 3:19-CV-6017-DWC, 2020 WL 4382483, at *10 (W.D. Wash. July 31, 2020) ("The RFC assessment must always consider and address medical source opinions") (internal citations and quotations omitted); Margie R. v. Saul, Case No. 3:19-cv-00514-JR, 2022 WL 2208384, at *4 (D. Or. June 21, 2022) (declining to reach the ALJ's RFC determination after concluding that medical opinion evidence needed to be reevaluated on remand); see also Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").  The ALJ must therefore reassess the RFC on remand.

## VII.   REMAND

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits.  See, e.g., Stone v. Heckler, 761 F.2d 530, 533 (9th Cir. 1985) (decision of whether to remand for further proceedings or remand for immediate payment of benefits is within the discretion of the reviewing court).  Whether an action is remanded for further proceedings or for an award of benefits depends on the likely utility of additional proceedings.  Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000).  In determining whether an award of benefits is warranted, the Court conducts the "three-part credit-as-true" analysis.  Garrison, 759 F.3d at 1020. Under this analysis the Court considers whether: (1) the ALJ has failed to provide legally

sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceeding would serve no useful purpose; and (3) if the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled on remand.  See Domingues v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015).

Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]"  Garrison, 759 F.3d at 1021.  "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) (citing Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014)) (internal quotations omitted).  The first requirement is met here based on the ALJ's harmful legal errors.  As discussed above, the ALJ erred in evaluating the opinions of Dr. Haas, Dr. Biggs, N.P. Batac, and Dr. Shima.

As for the second requirement, the Ninth Circuit has held that remanding for further proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities."  Treichler, 775 F.3d at 1101 (internal quotations and citations omitted).  Here, the Court concludes that the record is sufficiently ambiguous, making remand for an immediate payment of benefits inappropriate.  Accordingly, this case should be remanded for further administrative proceedings to: (1) conduct further review of the medical opinion evidence; (2) obtain additional VE testimony based on a reformulated RFC; and (3) conduct any further necessary proceedings.  See Burrell, 75 F.3d at 1141.

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits."  Leon v. Berryhill, 880 F.3d 1041, 1045 (9th Cir. 2018) (citing Treichler, 775 F.3d at 1099). "'The decision of whether to remand a case for additional evidence, or simply to award

benefits, is within the discretion of the court.'" <u>Trevizo v Berryhill</u>, 871 F.3d 664, 682 (9th Cir. 2017) (quoting <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1232 (9th Cir. 1987)).

Here, Petitioner asks the Court to remand for an award of benefits on the basis of the present record.  (Pl.'s Reply at 5.)  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  <u>Harman</u>, 211 F.3d at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  Where the circumstances of the case suggest that further administrative review could remedy the ALJ's errors, however, remand is appropriate.  <u>Revels</u>, 874 F.3d at 668; <u>McLeod v. Astrue</u>, 640 F.3d 881, 888 (9th Cir. 2011); <u>Harman</u>, 211 F.3d at 1179-81.  Remand is also warranted where "the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act."  <u>Burrell</u>, 775 F.3d at 1141; <u>see also</u> <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595-96 (9th Cir. 2004) (where it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate).

The Court concludes that the "rare circumstances that result in a direct award of benefits are not present in this case."  <u>Leon</u>, 880 F.3d at 1047.  The ALJ failed to adequately address whether Plaintiff's impairments were present before her DLI under the applicable social security rulings.  <u>See, e.g.</u>, <u>Lichter v. Bowen</u>, 814 F.2d 430, 436 (7th Cir. 1987) (remanding for further consideration when medical opinion evidence might have resulted in a different onset date determination); <u>Ratto v. Sec'y, Dep't of Health & Hum. Servs.</u>, 839 F. Supp. 1415, 1427 (D. Or. 1993) (same).  One of the options available to the ALJ to resolve the ambiguities in the record about the onset of a claimant's symptoms is to call a medical expert during the hearing.  <u>See</u> Section VI.A.4 n.8, <u>supra</u>.  Accordingly, the Court **RECOMMENDS** that this case be remanded for further administrative proceedings.

## VIII.  CONCLUSION & RECOMMENDATION

For the reasons set forth above, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED**, and Defendant's Cross-Motion for Summary Judgment be **DENIED**.  This Court further **RECOMMENDS** the case be **REMANDED** for further proceeding consistent with the above.

Additionally, **IT IS ORDERED** that no later than **February 6, 2023**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **February 13, 2023**.  The parties are advised that failure to file objections with the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED**

Dated:  January 23, 2023

_____
Honorable Lupe Rodriguez, Jr.
United States Magistrate Judge